Case 4:19-cv-01162   Document 28   Filed on 08/27/20 in TXSD   Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
August 27, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT ZURAWIN, M.D., | § | |
| *Plaintiff,* | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:19-cv-1162 |
| | § | |
| UNUM LIFE INSURANCE COMPANY OF AMERICA, | § | |
| *Defendant.* | § | |

## MEMORANDUM AND RECOMMENDATION

The parties in this case dispute whether Plaintiff Dr. Robert Zurawin is entitled to benefits under Baylor College of Medicine's group disability insurance policy administered by Defendant Unum Life Insurance Company of America (Unum). Unum filed a Motion for Summary Judgment or, Alternatively, for Judgment Under Rule 52 (Dkt. 18) and Plaintiff filed a Motion for Summary Judgment (Dkt. 20).[1] Having considered the parties' written submissions, the administrative record, and the law, the Court recommends that Unum's Motion for Judgment Under Rule 52 be GRANTED and this case be DISMISSED with prejudice.

### I.  Standard of Review

This case is governed by the Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* (ERISA). The parties agree that the Court should decide this case on the written submissions of the parties based on a de novo review of the administrative record. Dkt. 10; Dkt. 18 at 6; Dkt. 20 at 8; *Ariana M. v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246 (5th Cir. 2018) (en banc) (review of denial of benefits decision is governed by de novo standard of review rather than abuse of discretion). Under a de novo standard of review, the Court's task is to determine whether the administrator made a correct decision. *Pike v. Hartford life and Acc. Ins. Co.*, 368 F. Supp.3d 1018, 1030 (E.D. Tex. 2019); *Ingerson v. Principal Life Ins. Co.*, Civil Action No. 2:18-cv-227-Z-BR, 2020 WL 3163074, *8 (N.D. Tex. May 13, 2020). It remains the

---

[1] The District Court referred this matter to this Magistrate Judge for report and recommendation. Dkt. 21.

Plaintiff's burden to show by a preponderance of the evidence that he is entitled to benefits. *Id.*

The Fifth Circuit recently acknowledged "there is an open question whether it is appropriate to resolve ERISA claims subject to de novo review on summary judgment, or whether the district court should conduct a bench trial." *Katherine P. v. Humana Health Plan, Inc.*, 959 F.3d 206, 208 (5th Cir. 2020). The Fifth Circuit declined to answer the open question because the parties did not raise it, but reversed entry of summary judgment for the defendant and remanded for further proceedings due to a genuine issue of material fact precluding summary judgment. As in *Katherine P.*, the parties here consent to resolution on summary judgment, although Defendant has moved for judgment alternatively under Rule 52. However, *Katherine P.* instructs that is it not proper for the District Court to enter summary judgment under Rule 56 in an ERISA case subject to de novo review if the administrative record presents a genuine issue of material fact. *See Koch v. Metro. Life Ins. Co.*, 425 F. Supp. 3d 741, 746-47 (N.D. Tex. 2019) (surveying authorities and concluding that summary judgment is not proper where the Court must conduct an independent review of the administrative record); *Cf. Woods v. Riverbend County Club Inc.*, 320 F. Supp. 3d 901, 909-10 (S.D. Tex. 2019) (granting defendant's motion for summary judgment after de novo review because the fact issues raised by plaintiff were not dispositive).

The Court concludes that the appropriate way to resolve this dispute is by making findings of fact and conclusions of law consistent with Rule 52 based on the administrative record and briefing. *See Ingerson*, 2020 WL 3163074, at *1 n.3 (making recommended findings of fact and conclusions of law pursuant to Rule 52 where parties requested trial on the administrative record and briefing); *O'Hara v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 642 F.3d 110, 116 (2d Cir. 2011) (a trial on the papers followed by express findings of fact and conclusions of law under Rule 52 is appropriate where it is clear that the parties consent to a bench trial on the parties' submissions); *Hill v. Hartford Life & Accident Ins. Co.*, 1:08-CV-0754-CC, 2009 WL 10664970, at *1 (N.D. Ga. Sept. 16, 2009) (treating plaintiff's summary judgment motion on his ERISA

claims as trial on the papers pursuant to Rule 52).

## II.     Findings of Fact Based on De Novo Review of Administrative Record[2]

For purposes of this Recommendation, the Court finds the following facts are established by the Administrative Record.[3]

*The Group Policy*

1. Defendant and Baylor were parties to Group Insurance Policy #586228-002 (Group Policy) with an effective date of January 1, 2003.  A.R. 23.

2. Plaintiff worked for Baylor College of Medicine (Baylor) as an Associate Professor in Obstetrics and Gynecology.  A.R. 444, 923.  While employed by Baylor as an Associate Professor, Plaintiff was covered by the Group Policy. *See* A.R. 27, 554.

3. The Group Policy contains the following relevant provisions:

   **WHEN DOES YOUR COVERAGE END?**

   Your coverage under the policy of a plan ends on the earliest of:
   - the date the policy or plan is canceled;
   - the date you no longer are in an eligible group;
   - the date your eligible group is no longer covered;
   - the last day of the period for which you made any required contributions; or
   - the last day you are in active employment except as provided under the covered layoff or leave of absence provision.

   A.R. 36-37.

   **ONCE YOUR COVERAGE BEGINS, WHAT HAPPENS IF YOU ARE TEMPORARILY NOT WORKING?**

   If you are on a **leave of absence** in accordance with your Employer's Human Resources policy, and if premium is paid by you, you will be covered up to but not exceeding 1 year.
   A.R. 36.

---

[2] To the extent any finding of fact is deemed to be a conclusion of law, or vice versa, the one is adopted as the other.
[3] Defendant filed excerpts from the Administrative Record in support of its Motion for Summary Judgment. Dkt. 19. Plaintiff initially did not file any evidence with his Motion.  The Court ordered Plaintiff to file the evidence on which he relies.  Dkt. 26.  The complete Administrative Record is now before the Court.  Dkt. 27.  Citations to the Administrative Record are identified by A.R. and page number.  Some documents are included in the record more than once and may be cited herein by any page number at which they appear.

**DOES YOUR EMPLOYER ACT AS YOUR AGENT OR UNUM'S AGENT?**

For purposes of the policy, your Employer acts on its own behalf or as your agent. Under no circumstances will your Employer be deemed the agent of Unum.
A.R. 38.

**WHAT INSURANCE IS AVAILABLE IF YOU END EMPLOYMENT? (Conversion)**

If you end employment with your Employer, your coverage under the plan will end. You may be eligible to purchase insurance under Unum's group conversion policy.

\* \* \*

Unum will determine the coverage you will have under the conversion policy. The conversion policy may not be the same coverage we offered you under your Employer's group plan.

You are not eligible to apply for coverage under Unum's group conversion policy if:

\* \* \*

- You are disabled under the terms of the plan;

\* \* \*

- You are on a leave of absence;

A.R. 48.

4. The Group Policy provides the following definitions:

**ACTIVE EMPLOYMENT** means you are working for your Employer for earnings that are paid regularly and that you are performing the material and substantial duties of your regular occupation. Your work site must be: your Employer's usual place of business; an alternative work site at the direction of your Employer,. . . or a location to which your job requires you to travel.

**EMPLOYEE** means a person who is in active employment in the United States with the Employer.

**EMPLOYER** means the Policyholder, and includes any division, subsidiary or affiliated company named in the policy.

**LAYOFF** or **LEAVE OF ABSENCE** means that you are temporarily absent from active employment for a period of time that has been agreed to in advance in writing by your Employer.
A.R. 53-54.

*The Settlement Agreement Between Plaintiff and Baylor*

5. On February 18, 2015, as the result of a mediation that occurred in December 2014, Plaintiff signed a Settlement Agreement with Baylor. A.R. 923-33.

6. Unum was not a party to the Settlement Agreement.  *See id.*

7. As part of the Settlement Agreement, Plaintiff agreed to provide, and Baylor agreed to accept, Plaintiff's voluntary resignation which would be effective as of February 8, 2015. A.R. 923, 926.

8. Baylor agreed in the Settlement Agreement to note in its HRIS database that Plaintiff retained a "voluntary faculty position" for 18 months after the resignation date or until he obtained another faculty position. The voluntary faculty appointment did not include "any teaching responsibilities or duties."   A.R. 923.

9. Baylor agreed to pay Plaintiff through January 28, 2015 and to pay Plaintiff a lump sum settlement.   A.R. 924.

10. Baylor agreed to provide Plaintiff COBRA group health, dental insurance, and standard disability benefits "the same as the benefits afforded under his plan coverage in effect immediately prior to his resignation" for up to 18 months from the resignation date.  *Id.*

11. Plaintiff waived any right to reinstatement, future employment or independent contractor work with Baylor after the effective date of the Settlement Agreement.   A.R. 927.

12. In the Settlement Agreement Plaintiff agreed that in the event he should inadvertently seek employment at Baylor College of Medicine (as opposed to an affiliate), he would upon notification, immediately withdraw any application for employment.  He also agreed that Baylor shall have no obligation to consider his application for employment or hire him for any position that becomes available at Baylor.   A.R. 926-27.

13. The Settlement Agreement contains a merger clause providing that it embodies the entire agreement between the parties.   A.R. 931.

*Plaintiff's claim for disability under the Group Policy*

14. Plaintiff submitted a claim for long term disability benefits to Defendant on August 3, 2016 asserting difficulties communicating with patients and in surgeries. The claim identified his employer as Baylor College of Medicine and his last day worked as December 22, 2015. A.R. 98-103.

15. In subsequent phone calls, Plaintiff confirmed he last worked for Baylor in February 2015 but worked in private practice from May 2015 until December 2015. A.R. 273, 393.

16. After receiving the claim, Defendant asked Plaintiff to submit an Employer and Attending Physician form. A.R. 112.

17. Notes from an August 10, 2016 telephone call between Plaintiff and an Unum representative state that Plaintiff told the representative he left Baylor in February 2015, but Baylor was supposed to pay LTD (Long Term Disability) premiums for 18 months. A.R. 115.

*Defendant's agreement with Baylor to retroactively convert Plaintiff's disability policy*

18. After Plaintiff filed his disability claim, Baylor contacted Defendant to request that Plaintiff be allowed to "convert retroactively" even though his last date of employment was February 8, 2015. A.R. 554-55.

19. Defendant agreed to convert the policy retroactively subject to premium payments. *Id.*

20. Defendant agreed to convert the policy even though Plaintiff had not applied for conversion within the 31-day time limit after his employment ended as required by the Group Policy. *See* A.R. 555. Defendant noted that "If, in the future, Baylor is making an agreement to continue coverage, the employee should begin the conversion process at the time employment ends." *Id.*

21. Plaintiff signed an application to "convert" his policy on August 22, 2016. A.R. 525.

22. In response to the question on the application to "check the maximum monthly benefit you

6

are applying for," Plaintiff checked the box for the "Higher Maximum Option" of $6000. The application identifies the maximum Standard Option benefit as $4000.  *Id.*

23. The Conversion Policy informed Plaintiff that the maximum benefit under the Conversion Policy is the lesser of:  (1)  the maximum monthly benefit shown in the plan outline ($4000 or $6000) or (2) basic monthly earnings multiplied by the benefit percentage shown in the plan outline.  A.R. 10, 571.  Plaintiff did not provide the documentation required for the "Higher Maximum Option" of $6000 and therefore his maximum monthly benefit under the conversion policy is $4000.   A.R. 735.

24. Baylor executed the employer section of the conversion application on August 23, 2016. A.R. 528. Baylor represented in the employer section of the conversion application that Plaintiff had been covered under the Group Policy, that his coverage was not ending as the result of a leave of absence, and that his employment was terminated on February 7, 2015. Baylor gave the reason for his termination as "changed from paid to non-paid." *Id.*

*The claim approval and appeal process*

25. Baylor completed and sent to Defendant a September 9, 2016 Employer Statement identifying Plaintiff's last day of work for Baylor as February 7, 2015.  A.R. 187.

26. Plaintiff also identified his last day of work at Baylor as February 7, 2015 but stated that he then worked in private practice from May 2015 until December 2015.  A.R. 273, 393.

27. Plaintiff told Defendant his reason for leaving Baylor was not his disability.  A.R. 273, 393.

28. The Work Experience and Education Questionnaire signed by Plaintiff on November 13, 2016 states his dates of employment at Baylor as January 1, 1995 through February 8, 2015.  A.R. 444.

29. In November 2016, Defendant asked Baylor to provide leave of absence paperwork for Plaintiff in order to "complete [its] evaluation as to whether benefits are payable.  A.R.

7

430.

30. On December 1, 2016, Defendant notified Plaintiff that it approved his disability claim at a monthly benefit of $4,000 under Policy 152761, which is the Conversion Policy. A.R. 3, 585.

31. Plaintiff objected to the calculation and payment of disability benefits under the Conversion Policy instead of the Group Policy.   A.R. 620-22.

32. Plaintiff appealed the decision to pay benefits under the conversion policy and not the group policy.   Plaintiff argued that he was due a monthly benefit under the group policy because he was "nominally employed" by Baylor at all relevant times.   He also argued that the conversion from the Group Policy was invalid.   A.R. 910-13.

33. Defendant rejected Plaintiff's appeal.   A.R. 954-65.

34. Plaintiff was not on a leave of absence that would have allowed him to continue his coverage under the Group Policy after February 8, 2015. A.R. 36 ("If you are on a **leave of absence** in accordance with your Employer's Human Resources policy, and if premium is paid by you, you will be covered up to but not exceeding 1 year."); A.R. 54 ("**LEAVE OF ABSENCE** means that you are temporarily absent from active employment for a period of time that has been agreed to in advance in writing by your Employer."); A.R. 528.

35. Although Plaintiff may have been classified by Baylor as having a "voluntary faculty position" after his resignation, Plaintiff was not an Employee of Baylor or in Active Employment with Baylor, as those terms are defined in the Group Policy, after February 7, 2015.   *See* A.R. 53 (Definition of Active Employment requires person to be working for earnings paid regularly by Employer; Definition of Employee is a person in active employment with the Employer); 187 (Baylor's representation that Plaintiff's last day of work was 27/15);   273 (Plaintiff's statement to Defendant that his last day of work at

8

Baylor was 2/7/15); 393 (Plaintiff's statement to Defendant that he left Baylor in February 2015 because he wanted to do something different); 528 (Plaintiff's employment was terminated because his status "changed from paid to non-paid.").

36. Defendant does not dispute Plaintiff's disability in this lawsuit. *See* Dkt. 18.

### III.  Conclusions of Law

1. Federal common law governs the interpretation of all ERISA-regulated plan provisions. *Ramirez v. United of Omaha Life Ins. Co.*, 872 F.3d 721, 725 (5th Cir. 2017).

2. Under federal common law, the language of ERISA plan provisions is given "its ordinary and generally accepted meaning if such a meaning exists." *Id.*

3. If ERISA plan provisions are ambiguous after applying ordinary principles of contract interpretation, courts "apply the rule of *contra proferent[e]m* and construe the terms strictly in favor of the insured." *Id.*

4. The Court may consider analogous state law as a guide when determining the applicable federal common law. *Dialysis Newco, Inc. v. Cmty. Health Sys. Grp. Health Plan*, 938 F.3d 246, 252 (5th Cir. 2019).

5. The Baylor Group Policy is not ambiguous.

6. Baylor's Group Policy covers employees during "Active Employment."

7. Because Plaintiff did not work for Baylor for earnings that were paid regularly and did not perform the material and substantial duties of his regular occupation for Baylor as of February 8, 2015, Plaintiff ceased active employment with Baylor as of February 8, 2015.

8. As of February 8, 2015 and through August 3, 2016 when he filed his claim, Plaintiff was not covered by the Group Policy.

9. Baylor's Group Policy allows employees who are temporarily not working due to a layoff or leave of absence to continue their coverage under the Group Policy for up to one year.

10. Plaintiff was not entitled to invoke this provision to continue his group coverage after

February 8, 2015 because he was not on a leave of absence.

11. The definition of Leave of Absence in the policy and the plain meaning of the phrase "leave of absence" include an expectation that the employee's absence is temporary and he will return to work. *See https://thelawdictionary.org/leave-of-absence/*, last visited July 23, 2020 (leave of absence is "the term that applies to a temporary absence away from work due to a long illness or a holiday").

12. In the Settlement Agreement with Baylor, Plaintiff waived his right to any future employment or independent contractor work with Baylor following his resignation effective on February 8, 2015. A.R. 927. Therefore, Plaintiff's absence from Baylor after February 8, 2015 was permanent and not "temporary." Because Plaintiff was not entitled to return to paid work at Baylor after February 8, 2015, he was not eligible to extend his Group Policy coverage under the "leave of absence" provision.

13. The Group Policy covers Employees in Active Employment. Active Employment requires the Employee to be doing work for the Employer in exchange for earnings paid regularly. Plaintiff's status, pursuant to the terms of the Settlement Agreement, as an unpaid "volunteer" faculty member without any teaching duties cannot bring Plaintiff within the definition of an Employee in Active Employment after February 8, 2015.

14. Because he did not meet the definition of Employee set forth in the Group Policy after February 8, 2105, he was not eligible for coverage under the Group Policy after that date.

15. Plaintiff's argument that he did not understand the meaning of the conversion application he signed on August 22, 2016 does not void the Conversion Policy or entitle him to coverage under the Group Policy. *See Ramsey v. Colonial Life Ins. Co. of Am.*, 12 F.3d 472, 479 (5th Cir. 1994) (a court may reform or void a contract only "where **both** parties to a contract are mistaken as to a material aspect of the contract." (emphasis added)), superseded by rule on other grounds as stated in *Moody Nat'l Bank of Galveston v. GE Life*

*I Annuity Assurance Co.*, 383 F.3d 249, 251–53 & n.5 (5th Cir.2004).

16. Defendant's agreement in August 2016 to allow a conversion of the policy retroactive to Plaintiff's termination of employment was not wrongful or invalid. Plaintiff was no longer an Employee under the terms of the Group Policy after his resignation and he was not on a leave of absence that would allow him to extend coverage under the Group Policy. Nothing in the Group Policy or Settlement Agreement precluded Defendant's ability to retroactively convert the policy.

17. The Settlement Agreement conferred rights and obligations only on Plaintiff and Baylor. *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty.").

18. The Settlement Agreement between Baylor and Plaintiff, to which Defendant is not a party, cannot change or modify the terms of the Group Policy or Plaintiff's eligibility for coverage under the Group Policy. *Id.* Therefore, Baylor's pledge in the Settlement Agreement to maintain Plaintiff's "standard disability benefits" at the level prior to his resignation did not, and could not, modify the terms of the Group Policy or create eligibility for coverage outside the terms of the Group Policy. *Id.*; A.R. 23.

19. The provision in the Settlement Agreement between Plaintiff and Baylor for Plaintiff to continue unpaid "voluntary employment," did not govern or affect whether Plaintiff was an Employee in Active Employment or on a Leave of Absence under the terms of the Group Policy. A.R. 163, 923-33.

20. Plaintiff's argument that Defendant mishandled his claim because Baylor failed to provide leave of absence documents as requested by Defendant in November 2016 fails because Plaintiff's arrangement with Baylor does not constitute a leave of absence under the plain meaning of the language in the Group Policy.

21. Plaintiff had a full and fair opportunity during the administrative process to pursue his

claim and to present all his arguments regarding Defendant's decision to award benefits under the Conversion Policy.

22. Defendant awarded Plaintiff benefits in the amount it did because Defendant allowed a retroactive conversion of the Group Policy, found Plaintiff was covered under the Conversion Policy, and found that Plaintiff was disabled under the Conversion Policy. A.R. 585; 623.

23. Plaintiff is not entitled to disability benefits under the Baylor Group Policy.

24. The administrator made a correct decision on Plaintiff's claim. *Pike v. Hartford life and Acc. Ins. Co.*, 368 F. Supp.3d 1018, 1030 (E.D. Tex. 2019); *Ingerson v. Principal Life Ins. Co.*, Civil Action No. 2:18-cv-227-Z-BR, 2020 WL 3163074, *8 (May 13, 2020).

25. ERISA provides that the Court "in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1); *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251–52 (2010). However, the Court's discretion is not unlimited. *Hardt*, 560 U.S. at 254; *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980) (setting forth factors a court may consider when deciding whether to award attorneys' fees to a party). The parties should be given an opportunity to brief the issue of attorney fees after entry of judgment by the District Court.

### IV.   Conclusion and Recommendation

Based on the Court's findings and conclusions made after a de novo review of the administrative record, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (treated as a Motion for Judgment under Rule 52) (Dkt. 20) be DENIED; Defendant's Alternative Motion for Judgment Under Rule 52 (Dkt. 18) be GRANTED; and this case be DISMISSED with prejudice. The Court further RECOMMENDS that the parties be permitted to move for an award of attorney fees within 14 days after entry of judgment by the District Court.

The Clerk of the Court shall send copies of the memorandum and recommendation to the

respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c).   Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Signed on August 27, 2020, at Houston, Texas.

                                                Christina A. Bryan
                                          United States Magistrate Judge